THE HONORABLE THOMAS S. ZILLY

1
2
3
4
5
6
7

## UNTIED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON

8

GLACIER NORTHWEST, INC.,

9
               Plaintiff,

10
     v.

11

CEMENTAID INTERNATIONAL
MARKETING, LTD.,

12
13
             Defendant.

Case No. 2:18-cv-00556-TSZ

**CEMENTAID INTERNATIONAL
MARKETING LTD.'S MOTION TO
DISMISS GLACIER NORTHWEST,
INC.'S AMENDED COMPLAINT**

**NOTE ON MOTION CALENDAR:
DECEMBER 14, 2018**

14
15
16
17
18
19
20
21
22
23
24
25
26
27

CEMENTAID INTERNATIONAL MARKETING, LTD.'S
MOTION TO DISMISS

**Bracewell LLP** 701 Fifth Ave., Suite 6200
Seattle, Washington 98104-7043
Phone 206.204.6200 Fax 800.404.3970

# **TABLE OF CONTENTS**

I.      Introduction ........................................................................................................1

II.     Factual Background ...........................................................................................2

        A.      The Agreement Between Cementaid And Glacier.............................2

        B.      The Allegations In The Complaint ...................................................3

III.    Legal Standard ...................................................................................................4

IV.     Glacier's Second And Fourth Causes Of Action For Breach Of Contract Should Be Dismissed Because Glacier Has Not Pled Any Facts Showing That Cementaid Breached A Duty Imposed By The Agreement ...........................................................5

        A.      Glacier Has Not Pled Any Facts Showing That The Underlying Proceedings Raise A Product Liability Claim That Would Invoke Cementaid's Alleged Duty To Defend ...................................................................................6

        B.      Glacier Has Not Pled Any Facts Showing That The Duty To Defend And The Duty To Indemnify Have Arisen ...........................................................8

                1.      Glacier Cannot Plead A Breach Of The Duty To Defend Because The Complaint Contains No Facts Demonstrating That Liability Would Eventually Fall On Cementaid ...............................................................9

                2.      Glacier Cannot Plead A Breach Of The Duty To Indemnify Because The Parties In The Underlying Action Have Not Prevailed ...............11

V.      In The Absence of A Cause Of Action For Breach Of Contract, Glacier's First And Third Causes Of Action For Declaratory Judgment Must Be Dismissed...................12

VI.     Conclusion .......................................................................................................12

1
2
## TABLE OF AUTHORITIES
3
**Page(s)**
4
**Cases**
5
*Adams v. Johnson*,
 355 F.3d 1179 (9th Cir. 2004) ...................................................................................4
6
7
*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)....................................................................................................4
8
9
*Ballard Residential, LLC v. Pac. Rim Framing Co., Inc.*,
 149 Wash. App. 1060 (Wash. Ct. App. 2009) (unpublished).....................................9
10
*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)....................................................................................................4
11
12
*Calkins v. Lorain Div. of Koehring Co*.,
 26 Wash. App. 206 (Wash. Ct. App. 1980) ...............................................................5
13
14
*Cascade Designs Inc., v. Windcatcher Tech. LLC*,
 Case No. C15-1310, 2016 WL 374564 (W.D. Wash. Feb. 1, 2016) ....................4, 5
15
*Dixon v. Fiat-Roosevelt Motors, Inc.*,
 8 Wash. App. 689 (Wash. Ct. App. 1973) ............................................................9, 10
16
17
*Dri-Eaz Prods., Inc., v. Dan Duc Nguyen*,
 Case No. C11–1654Z, 2012 WL 1537598 (W.D. Wash. May 1, 2012)....................4
18
19
*Hay v. Tollen*,
 4 Wash. App. 2d 1036 (Wash. Ct. App. 2018) (unpublished)...............................8, 9
20
*Hummel v. Nw. Tr. Servs., Inc.*,
 180 F. Supp. 3d 798, 810 (W.D. Wash. 2016)..........................................................12
21
22
*Knipschield v. C-J Recreation, Inc.*,
 74 Wash. App. 212 (Wash. Ct. App. 1994) .............................................5, 8, 9, 11
23
24
*Krasucki v. Nationstar Mortg., LLC*,
 Case No. C15-0229JLR, 2015 WL 11251850 (W.D. Wash. July 8, 2015)..............12
25
*Lemberg v. JPMorgan Chase Bank, N.A.*,
 Case No. 17-cv-05241, 2018 WL 1046886 (N.D. Cal. Feb. 26, 2018) .....................6
26
27
*Minnick v. Clearwire US, LLC*,
 683 F. Supp. 2d 1179 (W.D. Wash. 2010)................................................................12

*Mountain Club Owner's Assoc. v. Graybar Elec. Co., Inc.*,
  Case No. No. 2:13–1835, 2014 WL 130767 (E.D. Cal. Jan. 14, 2014) ................................6, 7

*Myers v. State*,
  152 Wash. App. 823 (Wash. Ct. App. 2009) ..............................................................................5

*Parks v. W. Wash. Fair Ass'n*,
  15 Wash. App. 852 (Wash. Ct. App. 1976) ........................................................................8, 11

**Rules**

Fed. R. Civ. P. 12(b)(6) ..........................................................................................2, 4, 12

1

2   **I.   Introduction**

3          In this case, Glacier Northwest, Inc. ("Glacier") attempts to impose upon Cementaid

4   International Marketing, Ltd. ("Cementaid") a non-existent duty to indemnify and defend Glacier

5   in two separate California lawsuits.  The two lawsuits, which are ongoing, involve purported

6   construction defects on two large scale residential projects (the "Millennium Tower Action" and

7   the "Axis Action," collectively, the "Projects").  Although Cementaid—a Hong Kong Company—

8   might have manufactured cement waterproofing additives that were used in one or both Projects,

9   Cementaid's additives do not appear to have any connection with the alleged construction defects.

10         Glacier stretched halfway around the world to reach Cementaid, apparently in search of

11  coverage for its defense costs and for indemnification; however, the threadbare allegations in

12  Glacier's Amended Complaint ("Complaint") fall woefully short of stating a viable claim. Indeed,

13  not only does the Complaint fail to state any facts supporting a claim for breach of contract and

14  declaratory judgment, but the limited allegations provided in the Complaint demonstrate that

15  Glacier cannot do so.

16         Glacier's claims are based on a Marketing and Material Supply Agreement ("Agreement"),

17  executed nearly seventeen years ago (which Glacier fails to attach to the Complaint).  The terms of

18  the Agreement that Glacier cites are, on their own, fatal to its claims against Cementaid.  As Glacier

19  acknowledges, the Agreement specifically limits Cementaid's indemnification obligations to

20  "product liability claims."   Complaint ¶ 9.   The Complaint, however, fails to allege that the

21  plaintiffs in the Millennium Tower and Axis Actions—or Webcor Construction LP ("Webcor"),

22  which filed cross-complaints against Glacier in those actions—have asserted a product liability

23  claim against Glacier.  In fact, the complaints and cross-complaints in the Millennium Tower and

24  Axis Actions do not identify a single Glacier (or Cementaid) product that was used at the Projects

25  and they do not assert product liability claims against any party at all.  In spite of its months-long

26  involvement in both the Millennium Tower and Axis Actions, Glacier failed to associate any of the

27

CEMENTAID INTERNATIONAL MARKETING LTD.'S
MOTION TO DISMISS                                   - 1 -

**Bracewell LLP** 701 Fifth Ave., Suite 6200
Seattle, Washington  98104-7043
Phone 206.204.6200 Fax 800.404.3970

1   purported Project construction defects with a product liability claim that could be asserted against

2   Cementaid.  For this reason, the Complaint must be dismissed.

3         Even if a product liability claim could be inferred from the Complaint, it is still devoid of

4   any factual allegations that could support a duty to defend or indemnify.  Specifically, Glacier has

5   not pled facts sufficient to create a plausible inference that liability would _necessarily_ and

6   eventually fall on Cementaid, thereby giving rise to a duty to defend.  Nor can Glacier do so.  And

7   because the Millennium Tower and Axis Actions are ongoing, Glacier cannot plead a necessary

8   predicate for an indemnity claim; namely, that the plaintiffs and/or Webcor have prevailed on any

9   claims asserted against Glacier.

10         Accordingly, because Glacier has not plausibly alleged that Cementaid has a duty to defend

11   or indemnify Glacier, its purported causes of action for breach of contract and declaratory judgment

12   fail.  Pursuant to Federal Rule of Civil Procedure 12(b)(6), Cementaid therefore moves to dismiss

13   the Complaint for failure to state a claim upon which relief can be granted.

14   **II.     Factual Background**

15         **A.     The Agreement Between Cementaid And Glacier**

16         The Agreement between Cementaid and Glacier (dated December 31, 2001) gives Glacier

17   rights to distribute certain concrete additives, admixtures, and surface treatments within certain

18   portions of the United States.  _See_ Declaration of Jared Schuettenhelm ("Schuettenhelm Decl.") ¶¶

19   4, 5.  Notwithstanding these distribution rights, the Agreement makes clear that the relationship

20   between Cementaid and Glacier is "that of independent contractors," and thus is "not [to] be

21   construe to create a partnership, joint venture, agency, franchise or other relationship."  _Id._ ¶ 7.

22   The independent nature of this relationship is affirmed by the fact that "[n]either party shall have

23   authority to create, or to assume in the name of the other party or on its behalf, any obligations,

24   express or implied for any purpose."  _Id._

25         The Agreement also contains indemnity provisions, which are triggered by a limited number

26   of specific potential claims.  As Glacier acknowledges, Cementaid's limited indemnification

27   obligation is triggered by "product liability claims related to the Cementaid products."

Complaint ¶ 9.   In contrast, Glacier is solely liable—and must indemnify Cementaid—for "all claims, actions, damages, liabilities, [and] expenses" arising from or occasioned by Glacier's acts, both intentional and negligent, relating to Glacier's "shipping, transport, storage, distribution, sale or use" of Cementaid's products.  Schuettenhelm Decl. ¶ 6.  Notably, Glacier acknowledges that its connection to the Millennium Tower and Axis Actions involves "the sale of Cementaid's product to Central Concrete."  Complaint ¶¶ 8, 13.  Thus, on its face the Complaint demonstrates that the Millennium Tower and Axis Actions involve matters (i.e., Glacier's sale of products) that potentially fall under Glacier's sole liability, and for which Glacier must pay any defense costs for and indemnify Cementaid.

**B.      The Allegations In The Complaint**

While Glacier summarily and self-servingly concludes that the Millennium Tower and Axis Actions involve "product liability claims," it fails to plead any facts showing that the plaintiffs in either of those actions have raised a product liability claim implicating any Cementaid product.  To the contrary, Glacier's boilerplate allegations regarding the Millennium Tower Action are limited to a single sentence, which asserts only that the plaintiff "alleges numerous problems with the condition of the Millennium Tower including, but not limited to water intrusion through foundation systems and slabs."  Complaint ¶ 7.  Glacier's allegations regarding the Axis litigation are even vaguer, stating only that the plaintiff "alleges numerous problems with the condition of the Axis project including, but not limited to, water intrusion."  *Id.* ¶ 12.  Notably, Glacier does not assert that the plaintiffs in the Millennium Tower Action and the Axis Action identified a single Cementaid product in their pleadings, much less that they raised a product liability claim against any Cementaid product.

Likewise, Glacier does not plead any facts suggesting that Webcor's cross-complaints allege a product liability claim concerning any Cementaid product.  Glacier states that it was "named as a cross-defendant in the Webcor cross-complaint[s]," and that it is "informed and believes that its only relationship to Webcor . . .  is the sale of Cementaid's product to Central Concrete which subsequently utilized that product in concrete work."  *Id.* ¶¶ 8, 13.  But as before,

Glacier does not allege that Webcor (1) identified any Cementaid product in its cross-complaints, (2) raised a product liability claim ascribed to any Cementaid product, or (3) explained how any Cementaid product was allegedly implicated in the plaintiffs' underlying pleadings.  In fact, the Webcor cross-complaint does not allege any product liability claims against a Cementaid product.

Aside from these conclusory allegations, the Complaint provides no other assertions that any Cementaid product is implicated in the underlying pleadings, or explain how the underlying pleadings raise a product liability claim.  Nor does Glacier concede how it ultimately could be found liable, much less demonstrate how any potential liability would necessarily transfer to Cementaid.

## III.   Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Dri-Eaz Prods., Inc., v. Dan Duc Nguyen*, Case No. C11–1654Z, 2012 WL 1537598, at *1 (W.D. Wash. May 1, 2012).  To be facially plausible, such "'factual content [must] allow[] the court to draw the reasonable inference' that a party is liable for the misconduct alleged."  *Cascade Designs Inc., v. Windcatcher Tech. LLC*, Case No. C15-1310, 2016 WL 374564, at *1 (W.D. Wash. Feb. 1, 2016) (*citing Iqbal*, 556 U.S. at 678).  Importantly, "[t]he plaintiff is obligated to provide grounds for his entitlement to relief that amount to more than labels and conclusions or a formulaic recitation of the elements of a cause of action."  *Dri-Eaz*, 2012 WL 1537598, at *1 (*citing Twombly*, 550 U.S. at 545).

While a court must assume the truth of all well-pleaded allegations, "[m]ere 'conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.'"  *Cascade*, 2016 WL 374564, at *1 (*citing Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)).  "A court may also dismiss a claim that lacks a cognizable legal theory, or the absence of sufficient facts to form a cognizable legal theory."  *Dri-Eaz*, 2012 WL 1537598, at *1 (citation omitted).  In

1    deciding a motion to dismiss, a court may also "look beyond a party's complaint to matters of public

2    record." *Cascade*, 2016 WL 374564, at *1 (citation omitted).

3    **IV.    Glacier's Second And Fourth Causes Of Action For Breach Of Contract Should
         Be Dismissed Because Glacier Has Not Pled Any Facts Showing That Cementaid
4        Breached A Duty Imposed By The Agreement**

5            "Indemnity agreements are subject to the fundamental rules of contract construction, i.e.,

6    the intent of the parties controls; this intent must be inferred from the contract as a whole; the

7    meaning afforded the provision and the whole contract must be reasonable and consistent with the

8    purpose of the overall undertaking[.]" *Knipschield v. C-J Recreation, Inc*., 74 Wash. App. 212,

9    215 (Wash. Ct. App. 1994) (citation omitted). "[C]lauses purporting to exculpate an indemnitee

10   from liability flowing solely from its own acts or omissions are not favored and are strictly

11   construed." *Id*. Further, "ambiguous indemnity contracts are construed against the indemnitee."

12   *Calkins v. Lorain Div. of Koehring Co*., 26 Wash. App. 206, 210 (Wash. Ct. App. 1980).

13          A breach of contract claim "requires a showing of '(1) a contract that imposed a duty, (2)

14   breach of that duty, and (3) an economic loss as a result of the breach.'" *Cascade*, 2016 WL 374564,

15   at *3 (citing *Myers v. State*, 152 Wash. App. 823, 827-828 (Wash. Ct. App. 2009)). Here, the

16   Complaint appears to allege that Cementaid breached two duties in relation to the Millennium

17   Tower and Axis Actions: (1) a duty to defend Glacier, and (2) a duty to indemnify Glacier. *See,*

18   *e.g.,* Complaint ¶¶ 10, 15, 19, 25 (reciting an alleged "obligation to indemnify Glacier"); 

19   *id*. ¶ 20, 26 (reciting an alleged obligation to "defend and indemnify" Glacier). But Glacier has not

20   pled any facts demonstrating that the Millennium Tower and Axis Actions involve a product

21   liability claim—the only type of claim that Cementaid is contractually obligated to defend and

22   indemnify. And even if the Complaint was sufficient to raise a colorable product liability claim,

23   Glacier has not pled any facts showing that Cementaid's alleged duty to defend and indemnify have

24   arisen. As such, the Complaint must be dismissed.

25

26

27

**A.    Glacier Has Not Pled Any Facts Showing That The Underlying Proceedings Raise A Product Liability Claim That Would Invoke Cementaid's Alleged Duty To Defend**

Glacier acknowledges that Cementaid's alleged duty to defend and indemnify Glacier—to the extent it is applicable at all—is limited to "product liability" claims.  Under California law,[1] a plaintiff may only raise a product liability claim "on the theory of strict liability in tort or on the theory of negligence."  *Lemberg v. JPMorgan Chase Bank, N.A.*, Case No. 17-cv-05241, 2018 WL 1046886, at *2 (N.D. Cal. Feb. 26, 2018) (granting motion to dismiss product liability claim for failing to plead sufficient factual information).  To plead a strict product liability claim, the plaintiff must allege facts showing either a manufacturing defect, a design defect, or a warning defect in the product.  *Id.*; *Mountain Club Owner's Assoc. v. Graybar Elec. Co., Inc.*, Case No. No. 2:13–1835, 2014 WL 130767, at * 2 (E.D. Cal. Jan. 14, 2014) ("Plaintiff's failure to identify the alleged defect in the electrical cable is fatal to its strict liability claim.").  Alternatively, "[t]o prevail on a negligence products liability claim, a plaintiff must show that the defendant owed her a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of his injuries."  *Lemberg*, 2018 WL 1046886, at *2 (citation omitted).  Under a negligence theory, the plaintiff must also demonstrate "'that the defect in the product was due to negligence of the defendant.'"  *Id.* (citations omitted).  Regardless of which theory is ultimately pled, "a bare allegation that a product is defective is an insufficient legal conclusion."  *Id.*; *Mountain Club*, 2014 WL 130767, at * 1.

Here, the Complaint is devoid of any facts demonstrating that a product liability claim implicating Cementaid's products has been raised in either the Millennium Tower or Axis Actions.  For example, Glacier contends that the plaintiff in the underlying Millennium Tower Action alleges "numerous problems with the condition of the Millennium Tower including, but not limited to, water intrusion through foundation systems and slabs."  Complaint ¶ 7.  Glacier similarly asserts

---

[1]  Due to the conclusory nature of Glacier's allegations, and the lack of any facts regarding the alleged "product liability claim," Cementaid can only speculate that any such claim would be brought under California law, where the Millennium Tower and Axis Actions are pending.  Glacier's failure to plead this basic information further underscores the deficiencies in the Complaint.

that the plaintiff in the underlying Axis Action alleges "numerous problems with the condition of the Axis project including, but not limited to, water intrusion." *Id.* ¶ 12.  But these allegations do not suggest that the plaintiffs in either action have identified a Cementaid product in their underlying pleadings (indeed, they have not).  Nor do these allegations (1) say anything about a "product liability claim" being raised against any Cementaid product, (2) identify the alleged theory (strict liability or negligence) pursuant to which the product liability claim was allegedly raised, or (3) provide even the most rudimentary information regarding a single required element of a product liability claim under any theory.  As such, the Complaint fails to allege any facts that would allow Cementaid, or the Court, to plausibly infer that a product liability claim has been raised, thereby implicating a duty to defend and indemnify Glacier pursuant to the Agreement.  *Mountain Club*, 2014 WL 130767, at *1 (dismissing product liability claim where the plaintiff "does not identify the particular type of [product] or the alleged defect, let alone explain how the [product] was defective or how that defect resulted in a fire on plaintiff's property.").

Indeed, the Complaint is further undermined and should be dismissed because Glacier has argued in the Millennium Tower litigation the same precise points that Cementaid raises here, thus demonstrating that a product liability claim has not been raised in the plaintiffs' underlying pleadings.  Specifically, Glacier argues, in publicly available Court filings, that the plaintiff in the Millennium Tower Action has only "alleged defective design and construction of a residential high-rise" but "*has not alleged that Glacier is at fault* for the defective design and construction of the high-rise."  Request for Judicial Notice ("RJN"), Ex. 5, 3:7-9, 6:8-9 (emphasis added) (Glacier's Motion to Quash).

Likewise, Glacier pleads no facts showing that Webcor's cross-complaints raise a product liability claim involving a Cementaid product.  To the contrary, Glacier alleges only that it is named in the cross-complaints filed by Webcor, and that it is "informed and believes" that its only relation to Webcor as it relates to either project "is the sale of Cementaid's product to Central Concrete."  Complaint ¶¶ 8, 13.  As with its allegations regarding the underlying complaints, Glacier does not contend that Webcor identified any Cementaid product in its pleadings, allege that Webcor raised

**Bracewell LLP** 701 Fifth Ave., Suite 6200
Seattle, Washington 98104-7043
Phone 206.204.6200 Fax 800.404.3970

a product liability claim as to any Cementaid product, or explain the theory or elements upon which that alleged product liability claim is supposedly based.  Indeed, by Glacier's own admission, "the sole reference to Glacier [in Webcor's cross-complaint] is that Glacier is a Washington Corporation that was doing business in California at all relevant times."  RJN, Ex. 5, Declaration of J. Michael Grimm, at 1 (Glacier's Motion to Quash).

Moreover, while Glacier makes only two references to the "Caltite" product, Complaint ¶ 5, 6, at no point does Glacier allege that the Millennium Tower plaintiffs, the Axis plaintiffs, or Webcor identified Caltite (or any other Cementaid product) in their pleadings, much less that their pleadings pled the elements of either a strict liability or a negligent product liability claim as to Caltite, or explained how Caltite allegedly contributed to any purported construction defects.  In fact, as Glacier itself has explained in the Millennium Tower Action, "[m]erely supplying a product . . . bears no causal connection the design and construction defects which are causing the Millennium Towers to displace."  RJN, Ex. 5, at 6:25-26 (Glacier's Motion to Quash).

Accordingly, the "facts alleged . . . on the face of [Glacier's] complaint . . . are patently insufficient to impose a duty to defend," since there is "no allegation whatsoever which would link [Cementaid] . . . to the events leading to the filing of the complaint."  *Parks v. W. Wash. Fair Ass'n*, 15 Wash. App. 852, 856 (Wash. Ct. App. 1976); *Hay v. Tollen*, 4 Wash. App. 2d 1036, at *6 (Wash. Ct. App. 2018) (unpublished) (finding no duty to defend where a construction defect complaint "did not specify how the water penetration occurred, or specifically what defects existed," and "did not allege that [Defendant's] framing subcontractors had caused the defects.").  On that basis alone, Glacier's causes of action for breach of contract are inadequately pled and should be dismissed.

**B.     Glacier Has Not Pled Any Facts Showing That The Duty To Defend And The Duty To Indemnify Have Arisen**

Even if the Complaint raised a colorable product liability claim—which it does not— it should still be dismissed.  It is well established that "[t]he duty to defend and the duty to indemnify arise at different times in a tort proceeding."  *Knipschield*, 74 Wash. App. at 215 (citation omitted).  In this case, Glacier has not pled any facts demonstrating that the alleged duties to defend and

**Bracewell LLP** 701 Fifth Ave., Suite 6200
Seattle, Washington 98104-7043
Phone 206.204.6200 Fax 800.404.3970

indemnify have arisen.  For this additional reason, it has failed to state a cause of action for breach of contract.

      1.       **Glacier Cannot Plead A Breach Of The Duty To Defend Because The Complaint Contains No Facts Demonstrating That Liability Would Eventually Fall On Cementaid**

      To show entitlement to a duty to defend, the facts at the time of tender "*must* demonstrate that liability *would eventually fall upon the indemnitor*, thereby placing it under a duty to defend." *Knipschield,* 74 Wash. App. at 216 (citations omitted) (emphasis added); *Dixon v. Fiat-Roosevelt Motors, Inc.*, 8 Wash. App. 689, 694 (Wash. Ct. App. 1973).[2] Here, Glacier cannot state a claim for breach of the duty to defend because it has not alleged any facts that "*necessarily demonstrate* that liability would eventually fall upon [Cementaid]." *Dixon,* 8 Wash. App at 694 (emphasis added).

      The Complaint does not allege—much less plead facts to support an allegation—that Cementaid would eventually be liable for any damages in the Millennium Tower Action or the Axis Action.  As explained above, neither the plaintiffs' underlying pleadings, nor Webcor's cross-complaints, identify any Cementaid product, state a product liability claim against any Cementaid product, or allege that any Cementaid product is related to any of the alleged issues recited in the underlying complaints or cross-complaints.  Nor does Glacier make any attempt to connect plaintiffs' and Webcor's allegations to Cementaid, or provide any facts to explain how they potentially implicate any Cementaid product.  As such, the Complaint does not plausibly allege that Cementaid will necessarily be found liable in the underlying actions.  *Hay v. Tollen*, 4 Wash. App. 2d 1036, at *7 (finding no duty to defend where "[t]he record contains only general allegations that houses in the project sustained water damage without identifying the source of that water damage or whether the work by [Defendants] was related in any fashion to the source."); *Ballard Residential, LLC v. Pac. Rim Framing Co., Inc.*, 149 Wash. App. 1060, at *6 (Wash. Ct. App. 2009)

---

[2] Unlike an insurance policy, the mere *potential* for liability does not trigger a duty to defend pursuant to a contractual defense and indemnity clause.  *Hay v. Tollen*, 4 Wash. App. 2d 1036, at *6, n.6 ("The trigger for a duty to defend for standard contract is different than the duty to defend applied to insurance contracts."); *Knipschield,* 74 Wash. App. at 216 & n.3 (contrasting a contractual duty to defend with the duty to defend in the insurance context).

1   (unpublished) (finding no duty to defend where the plaintiff "failed to provide evidence of a causal

2   connection between Pacific Rim's narrow scope of work regarding Tyvek and the documented

3   water damage.").

4       To the contrary, to the extent that the threadbare allegations in the Complaint allow any

5   plausible inference, it is that Glacier *cannot* plead any facts showing that liability in the underlying

6   actions would necessarily fall on Cementaid.  As Glacier acknowledges, Cementaid's limited duty

7   to defend is only implicated by a product liability claim.  In contrast, Glacier is liable for, and must

8   defend and indemnify Cementaid against, any and all claims involving Glacier's negligent or

9   intentional acts "with regard to [Glacier's] shipping, transport, storage, *distribution, sale* or use" of

10  Cementaid's products.  Schuettenhelm Decl. ¶ 6 (emphasis added).  As Glacier acknowledges, its

11  alleged connection to the Millennium Tower and Axis Actions involves "the *sale* of Cementaid's

12  products to Central Concrete."  Complaint ¶ 8, 13 (emphasis added).[3]  Thus, because the underlying

13  actions involve Glacier's sale of Cementaid products—thereby potentially implicating Glacier's

14  sole liability under the Agreement—Glacier cannot "demonstrate that [Cementaid] would

15  eventually be liable for plaintiff's injury if [Glacier] was found liable."  *Dixon,* 8 Wash. App at 694

16  (noting that since "Fiat's position as the retailer and A.R.E.'s position as the manufacturer are in

17  conflict," the duty to defend was not implicated).

18      Glacier's inability to plead that liability would necessarily fall on Cementaid is further

19  underscored by Glacier's statements in the underlying actions.  For example, in the Millennium

20  Tower Action, Glacier has stated that it is only "named in [Webcor's] cross-complaint in the event

21  that Webcor is found to have some liability in the underlying action."  RJN, Ex. 5, at 6:6-8 (Motion

22  to Quash).  Thus, by Glacier's own admission, there is only a *potential* for a finding of liability

23  against it, which is itself contingent on the *potential* for a finding of liability against Webcor.  This

---

24  [3]  Because this motion is based on the underlying pleadings, Cementaid does not, at this time, rely on any of the facts
25  revealed during discovery in the underlying litigations.  Nonetheless, Cementaid notes that Glacier's representation
    that it only "sold" Cementaid's products is, at best, incomplete.  Indeed, discovery in the underlying actions
26  demonstrates that Glacier had extensive involvement in, and approved and oversaw, various aspects of the projects.
    Thus, to the extent that the Court allows Glacier to amend its Complaint yet again, Cementaid anticipates moving
27  promptly for summary judgment as the facts plainly demonstrate that Glacier cannot, as a matter of law, succeed in
    demonstrating that Cementaid has a duty to defend Glacier.

---

CEMENTAID INTERNATIONAL MARKETING, LTD.'S                    **Bracewell LLP** 701 Fifth Ave., Suite 6200
MOTION TO DISMISS                    - 10 -                  Seattle, Washington 98104-7043
                                                            Phone 206.204.6200 Fax 800.404.3970

1   attenuated chain of "potential" liability does not support a plausible inference that liability would

2   _necessarily_ fall on Cementaid, thus triggering a duty to defend.  And as explained above, Glacier

3   has noted that the plaintiff in the Millennium Tower Action "has not alleged that Glacier is at fault

4   for the defective design and construction of the high-rise," and that "[m]erely supplying a

5   product . . . bears no causal connection the design and construction defects which are causing the

6   Millennium Towers to displace."  _Id_. at 6:8-9 & 25-26.  In view of these assertions, Glacier cannot

7   now contend that any liability would necessarily flow to Cementaid.

8   In sum, Glacier has not pled any facts demonstrating that liability "would eventually fall

9   upon [Cementaid], thereby placing it under a duty to defend."  _Knipschield_ at 74 Wash. App. at 216

10   (citations omitted).  As a result, it cannot state a claim against Cementaid for breach of any duty to

11   defend.

### 2.      Glacier Cannot Plead A Breach Of The Duty To Indemnify Because The Parties In The Underlying Action Have Not Prevailed

14   Under Washington law, the duty to indemnify only "'arises when the plaintiff in the

15   underlying action prevails on facts that fall within coverage."  _Knipschield,_ 74 Wash. App. at 216

16   (citations omitted); _Parks,_ 15 Wash. App. at 855 ("Only if the indemnitor can be said to have

17   breached that duty [to defend] can it be held liable for the indemnitee's costs of defending the

18   lawsuit").

19   Here, Glacier cannot plead that the underlying plaintiffs or Webcor have prevailed against

20   it in either the Millennium Tower Action or the Axis Action.  As the Complaint demonstrates, those

21   actions are currently ongoing and no judgments have been rendered against Glacier.  _See_

22   Complaint ¶¶ 18, 24 (noting that Glacier's defense in those cases is "continuing" and that it

23   "may . . . be obligated to pay the costs of a settlement or judgment" in the future.").  Accordingly,

24   Glacier cannot state a claim against Cementaid for breach of a duty to indemnify.

25

26

27

CEMENTAID INTERNATIONAL MARKETING, LTD.'S
MOTION TO DISMISS                    - 11 -

**Bracewell LLP** 701 Fifth Ave., Suite 6200
Seattle, Washington 98104-7043
Phone 206.204.6200 Fax 800.404.3970

**V.      In The Absence of A Cause Of Action For Breach Of Contract, Glacier's First And Third Causes Of Action For Declaratory Judgment Must Be Dismissed**

"It is well established that the Declaratory Judgment Act 'does not create an independent cause of action.'" *Hummel v. Nw. Tr. Servs., Inc.*, 180 F. Supp. 3d 798, 810 (W.D. Wash. 2016) (citations omitted).  "As such, in the absence of a substantive cause of action, the Court cannot grant declaratory relief." *Id.*; *Krasucki v. Nationstar Mortg., LLC*, Case No. C15-0229JLR, 2015 WL 11251850, at *4 (W.D. Wash. July 8, 2015) ("A declaratory judgment is a remedy, not a cause of action or theory of recovery.") (citations omitted); *Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1188-89 (W.D. Wash. 2010) ("Plaintiffs' cause of action for declaratory relief rises and falls with the remainder of the complaint.").

As explained above, the Complaint fails to state a claim for breach of contract.  Thus, because Glacier's claim for breach of contract fails, so must its claim for declaratory judgment since it is derivative of its flawed contract claims.  *Krasucki*, 2015 WL 11251850, at *4 ("[D]eclaratory relief will not be granted where the request for declaratory relief is derivative of an underlying claim and that underlying claim fails.") (citations omitted); *Hummel*, 180 F. Supp. 3d at 810-11 (holding that since the court dismissed the Plaintiff's other claims, "it must dismiss Plaintiff's declaratory relief claim as well.").

**VI.      Conclusion**

For the foregoing reasons, Cementaid respectfully requests that the Court dismiss the Complaint for failure to state a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: November 21, 2018                         Respectfully submitted,

                                                                    **BRACEWELL LLP**

                                                                    By: */s/ Philip J. Bezanson*
                                                                    Philip J. Bezanson, WSBA No. 50892
                                                                    Jared D. Schuettenhelm, WSBA No. 46181
                                                                    701 Fifth Avenue, Suite 6200
                                                                    Seattle, WA 98104-7043

1

2

Telephone:  (206) 204-6200
Facsimile:  (800) 404-3970
philip.bezanson@bracewell.com
jared.schuettenhelm@bracewell.com

3

4

5

6

7

Richard F. Whiteley (*pro hac vice* pending)
Stacianne M. Wilson (*pro hac vice* pending)
711 Louisiana Street, Suite 2300
Houston, TX 77002-2770
Telephone:  (713) 221-1123
Facsimile:  (800) 404-3970
richard.whiteley@bracewell.com
staci.wilson@bracewell.com

8

9

*Attorneys for Cementaid International Marketing, Ltd.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 21, 2018 to all counsel of record who have consented to electronic service via the Court's CM/ECF system.

*/s/ Philip J. Bezanson*
Philip J. Bezanson