THE HONORABLE THOMAS S. ZILLY

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON

GLACIER NORTHWEST, INC.,

    Plaintiff,

v.

CEMENTAID INTERNATIONAL MARKETING, LTD.,

    Defendant.

Case No. 2:18-cv-00556-TSZ

**CEMENTAID INTERNATIONAL MARKETING LTD.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS GLACIER NORTHWEST, INC.'S AMENDED COMPLAINT**

NOTE ON MOTION CALENDAR: DECEMBER 14, 2018

## I. Introduction

Cementaid International Marketing, Ltd.'s ("Cementaid") Motion to Dismiss ("Motion," filed as ECF 15) is grounded in clear and unambiguous language contained in the Marketing and Material Supply Agreement ("Agreement") between Cementaid and Glacier Northwest, Inc. ("Glacier"). The Agreement includes that Cementaid may be required to defend and indemnify Glacier in only three limited circumstances. None of those three circumstances are present here, and only one of the three circumstances—a potential product liability claim—is mentioned in Glacier's Amended Complaint ("Complaint"). But Glacier's assessment of the Agreement, as demonstrated by the Complaint and the arguments presented in its Opposition to the Motion ("Opposition" or "Opp."), is misplaced because no product liability claim has been asserted against Glacier (or Cementaid) in the underlying Millennium Tower and Axis Actions (collectively, "Actions"). Accordingly, Cementaid's narrow defense and indemnification obligations under the Agreement have not been triggered.

Glacier's claim that Cementaid should defend and indemnify Glacier is not just outside the scope of the Agreement, it is also premature. The operative complaints in the Actions do not name Glacier as a defendant—Glacier is only named as a contingent cross-defendant by Webcor Construction LP ("Webcor"), the general contractor for each project. Webcor's cross-complaints make clear that Glacier *might* only be liable to Webcor "*if* [Webcor is] held liable to Plaintiff" or others in the underlying Actions. *See, e.g.*, ECF 15-4, ¶ 32 (emphasis added); ECF 15-6, ¶ 30. Thus, Glacier's potential liability is contingent (1) on Webcor's liability and (2) a subsequent showing by Webcor[1] that Glacier is somehow responsible for Webcor's liability (which Glacier contests in both cases). Glacier's potential liability is too remote to give rise to any applicable duty for Cementaid to defend or indemnify Glacier.[2]

---

[1] Webcor only asserts causes of action for (1) Equitable Indemnity and Contribution, and (2) Declaratory Judgement against Glacier. Neither of these causes of action allege a product liability claim against Glacier.

[2] To the extent liability ever does attach to Glacier, it still would not fall within Cementaid's narrow defense and indemnification obligations because the claims that have been raised against Glacier by Webcor in each of the Actions do not include any product liability claims.

---

CEMENTAID INTERNATIONAL MARKETING LTD.'S
REPLY ISO ITS MOTION TO DISMISS       - 1 -

**Bracewell LLP** 701 Fifth Ave., Suite 6200
Seattle, Washington  98104-7043
Phone 206.204.6200 Fax 800.404.3970

Accordingly, Glacier is not entitled to defense or indemnification from Cementaid.

## II. Cementaid's Alleged Duty To Defend And Indemnify Is Narrow

### A. The Complaint Alleges No Facts That Trigger The Narrow Obligations

The Agreement is clear that Cementaid's alleged duty to defend and indemnify is limited. As Glacier acknowledges, Cementaid's alleged obligations can only be triggered by (a) "product liability" claims, (b) claims related to Cementaid's "negligence or intentional conduct," and (c) claims involving a "third-party's intellectual property rights." *See* Opp. at 8:13-20 (citing Section 12.1 of the Agreement). In this case, Glacier attempts to argue that the underlying complaints and cross-complaints in the Millennium Tower and Axis Actions invoke a product liability claim pursuant to subsection (a) of this provision. *See* Complaint ¶¶ 9, 14. Glacier's allegation has no merit and can be readily dismissed by a review of the pleadings and Glacier's submissions in the underlying Actions.

Neither the Plaintiff in the Millennium Tower Action nor the Plaintiff in the Axis Action name Glacier as a party. *See* ECF 15-3 (Millennium Tower Complaint); ECF 15-5 (Axis Complaint). Glacier is instead named in cross-complaints filed by Webcor, the general contractor for both projects and one of the original defendants in both Actions. *See* ECF 15-4 (Millennium Tower Cross-Complaint) and 15-6 (Axis Cross-Complaint). But Webcor's cross-complaints do not purport to state a cause of action for product liability against Glacier—to the contrary, Webcor's causes of action against Glacier are for "Equitable Indemnity and Contribution" and "Declaratory Relief." *See* ECF 15-4 at 6:24-9:21 (second and third causes of action); ECF 15-6 at 5:1-7:19 (same).[3] Moreover, the causes of action asserted against Webcor in the underlying complaints and the causes of action asserted by Webcor against Glacier do not include product liability allegations as to any product, much less a Cementaid product. *See id*. Accordingly, any

---

[3] While both cross-complaints also contain a cause of action for breach of express indemnity, that cause of action is not asserted against Glacier.

contention by Glacier that Cementaid is obligated to defend and indemnify against the causes of action asserted by Webcor is meritless and absent from the Agreement.[4]

Glacier's submissions in the underlying Actions confirm that no product liability claim has ever been raised.  As Cementaid explained (and Glacier neglected to refute), Glacier's prior submissions confirm that the plaintiff in the Millennium Tower Action has only "alleged defective design and construction of a residential high-rise" but "*has not alleged that Glacier is at fault* for the defective design and construction of the high-rise."  Motion at 7:17-21 (citing Glacier's Motion to Quash, filed at ECF 15-7); *see also id*. at 8:2-5 ("[B]y Glacier's own admission, 'the sole reference to Glacier [in Webcor's cross-complaint] is that Glacier is a Washington Corporation that was doing business in California at all relevant times.'") (citing Glacier's Motion to Quash, filed at ECF 15-7).  Moreover, Glacier has represented that "[m]erely supplying a product . . . *bears no causal connection the design and construction defects* which are causing the Millennium Towers to displace." *Id*. at 8:11-13 (citing Glacier's Motion to Quash, filed at ECF 15-7).  Glacier's representations do not assert any product liability defenses—none are needed, because no product liability claims are asserted.  Accordingly, the actual content of the underlying pleadings cannot be reconciled with Glacier's contention that the Actions raise a product liability claim.

Finally, while Glacier theorizes how a strict product liability claim could hypothetically be raised, Opp. at 9:20-11:3, it ignores and cannot overcome the simple fact that no product liability claim has actually been raised in the underlying pleadings.  As such, Glacier's references to design defects, the "consumer expectations test," and the "risk/benefit test" is both speculative and irrelevant.  Indeed, notably absent from Glacier's briefing is any citation to any allegation in Webcor's causes of action for equitable indemnification and declaratory judgment that assert a single product liability element or test.  Nor can Glacier plead such elements since it

---

[4] Glacier also raises Cementaid's alleged awareness that one of its products, Caltite, may have been used in the Millennium Tower project.  This discussion is irrelevant, as (1) Cementaid has not contested the possibility that it sold Caltite to Glacier or that Glacier may have shipped, transported, stored, distributed, sold, or used Caltite during its work on the Millennium Tower, and (2) nothing in this discussion indicates that a product liability claim has ever been raised regarding Caltite.  Indeed, Cementaid explicitly notes this in the Motion.  Motion at 8:6-13.

acknowledges that it is "not currently admitting or even asserting that there was actually any defect in Cementaid's product." Opp. at 10, n.1.

Accordingly, because Glacier has not pleaded any facts demonstrating that a product liability claim has been raised, its causes of action for breach of contract must be dismissed.

### B. Glacier's Attempt To Expand Cementaid's Alleged Obligations Is Meritless

Notwithstanding the narrow scope of Cementaid's indemnification obligations, Glacier's Opposition attempts to manufacture additional obligations to cover "any claims and actions . . . arising out of Cementaid's products, . . . not just claims for product liability." Opp. at 9:7-11. Glacier's attempt to rewrite the Agreement's clear and unambiguous language must be rejected.

Glacier's suggested interpretation directly contradicts the plain language of the indemnification clause. Cementaid's alleged obligation to defend and indemnify Glacier under the Agreement is limited to three distinct categories of claims: (a) "product liability" claims, (b) claims related to Cementaid's "negligence or intentional conduct," and (c) claims involving a "third-party's intellectual property rights."  Opp. at 8:13-20 (citing Section 12.1 of the Agreement).  Glacier does not purport to bring a claim arising under the last two subsections of the Agreement; to the contrary, the Complaint implicates a duty to indemnify and defend only for "*product liability claims* relating to the Cementaid Products." Complaint ¶¶ 9, 14 (emphasis added). But Glacier's tortured construction of the Agreement—which apparently would expand the black letter definition of a "product liability" claim to include claims for equitable indemnity—violates fundamental precepts of contract construction, is inconsistent with basic legal principles, and must be rejected. *Jones v. Strom Constr. Co*., *Inc*., 84 Wash. 2d 518, 520 (1974) (affirming the fundamental rule that "where the language used [in an indemnification agreement] is unambiguous an ambiguity will not be read into the contract"). Indeed, as Glacier notes, a strict product liability claim can only be premised on a theory of design defect, manufacturing defect, or failure to warn, Opp. at 9:25-27, yet none of these theories are found anywhere in Webcor's claims for equitable indemnity in either Action.

Glacier's strained interpretation is also at odds with *its* obligations to defend and indemnify Cementaid. The Agreement states that Glacier is liable for—and must defend and indemnify Cementaid against—any and all claims involving Glacier's negligent or intentional acts "with regard to [Glacier's] shipping, transport, storage, distribution, sale or use" of Cementaid's products. Motion at 10:7-10 (citing the Agreement). Glacier's expansive interpretation of Cementaid's three limited defense and indemnification obligations would entirely swallow Glacier's broad defense and indemnification obligations owed to Cementaid, and impermissibly write them out of the Agreement.

Finally, Glacier inexplicably cites *Jones v. Strom Construction. Co., Inc.*, in support of its allegation that it was the "intent of the parties" for Glacier "to be defended and indemnified against any all claims arising out of Cementaid's products." *See* Opp. at 9:11-15. Cementaid whole-heartedly agrees that *Jones* is relevant here, but notes that *Jones* does not support Glacier's position. Indeed, in *Jones* the Washington Supreme Court *rejected* a "broad all-inclusive interpretation" like the interpretation proposed by Glacier, and instead found that it did "not appear reasonable or in keeping with the overall purpose and intent of the subcontract, to isolate and read the indemnity clause in such a fashion as to virtually cast [the indemnitor] into the role of an insurer." *Jones*, 84 Wash. 2d at 518, 522. Indeed, "[s]uch an interpretation does not appear to us to square with a realistic effort on the part of the parties to logically allocate as between them the risk of loss arising out of the construction project and the subcontract in question." *Id.*; *see also Ballard Residential, LLC v. Pac. Rim Framing Co., Inc.*, 149 Wash. App. 1060, at *6 (Wash. Ct. App. 2009) ("[T]he indemnity provision in this case cannot reasonably be construed to mean that Pacific Rim, acting as one of several subcontractors on a large construction project, agreed to act as an insurer for Ballard Residential.") (unpublished).[5]

---

[5] The fact that the parties did not intend Cementaid to take the role of an insurer is demonstrated by Glacier's submissions in the Millennium Tower Action. Indeed, Glacier's counsel has represented that it has at least eleven relevant insurance policies, and that "the combined coverages of the listed eleven (11) policies exceeds $60,000,000.00, which is at least double of any damages Plaintiffs, and consequently, Cross-complainants, may conservatively ever assert against Glacier Northwest." *See* Cementaid's Request for Judicial Notice In Relation To Its Reply In Support Of Its Motion Dismiss Glacier's Amended Complaint, Exh. 1, ¶ 2 (Supplemental Response of

Accordingly, Glacier's attempt to expand Cementaid's defense and indemnification obligations beyond the clear and unambiguous limits of the Agreement must be rejected.

### III. Glacier's Alleged Claims For Defense And Indemnification Are Not Ripe

Even if Glacier could demonstrate that the underlying pleadings raise a product liability claim that could eventually give rise to an obligation to defend and indemnify, Glacier's demands here are premature and must be dismissed.

#### A. Glacier Cannot Show That Liability Would Necessarily and Eventually Fall On Cementaid

To receive a contractually mandated defense, the facts at the time of tender "'*must* demonstrate that liability *would eventually fall upon the indemnitor*, thereby placing it under a duty to defend.'" *Knipschield, v. C-J Recreation, Inc.,* 74 Wash. App. 212, 216 (Wash. Ct. App. 1994) (citation omitted) (emphasis added); Motion at 9:5-8. Glacier does not dispute this standard. *See* Opp. at 7:26-8:4. Nor does Glacier dispute Cementaid's arguments, which establish that Glacier cannot "*necessarily demonstrate* that liability would eventually fall upon [Cementaid]." *Dixon v. Fiat-Roosevelt Motors, Inc.,* 8 Wash. App. 689, 694 (Wash. Ct. App. 1973)) (emphasis added); Motion at 9:8-11. Accordingly, Glacier cannot show that Cementaid has a duty to defend Glacier in the underlying actions.

As Cementaid has explained, Glacier is simply a contingent defendant named in Webcor's cross-complaints. *See* Motion at 10:19-23; *supra* Section II.A. As such, Glacier can only be found liable in the event that Webcor is first found liable in the underlying actions. Webcor's cross-complaints make this clear, noting that it seeks indemnity from Glacier (and others) only "*if* [Webcor is] held liable to Plaintiff" or others in the underlying Actions. *See, e.g.*, ECF 15-4, ¶ 32 (Millennium Tower Cross-Complaint) (emphasis added); ECF 15-6, ¶ 30 (Axis Cross-Complaint). Glacier has also acknowledged the contingent nature of the claims raised against it, noting that it is only "named in [Webcor's] cross-complaint *in the event that Webcor is found to*

---

Glacier Northwest, Inc., To OSC Re Sanctions Re Insurance Policies). Glacier's Opposition also fails to mention that insurance is already providing for Glacier's defense.

*have some liability* in the underlying action." Motion at 10:19-22 (citing Glacier's Motion to Quash, filed at ECF 15-7) (emphasis added). Accordingly, Glacier cannot demonstrate that liability will necessarily fall on Glacier, much less that any such liability would necessarily and subsequently flow to Cementaid.

Moreover, Glacier does not dispute that the plain language of the Agreement also identifies circumstances in which Glacier is obligated to defend and indemnify Cementaid, even if Glacier is also found to be liable. As Cementaid previously explained, Glacier is liable for—and must defend and indemnify Cementaid against—any and all claims involving Glacier's negligent or intentional acts "with regard to [Glacier's] shipping, transport, storage, *distribution, sale* or *use*" of Cementaid's products. Motion at 10:7-10 (citing the Agreement); *see also supra* Section II.B. Because the Complaint admits that both the Millennium Tower and Axis Actions involve "the *sale* of Cementaid's products to Central Concrete," the Actions and Glacier's admissions implicate Glacier's sole obligation to defend and indemnify Cementaid pursuant to the plain language of the Agreement. Motion at 10:10-17; Complaint ¶¶ 8, 13. Glacier's Opposition does not contest (or even address) its obligations to Cementaid.

Glacier also concedes that the underlying Actions abstractly raise only the "potential that Caltite was defectively designed or manufactured." Opp. at 10:12-14. But as Cementaid has already explained, Washington law makes clear that "unlike an insurance policy, the mere potential for liability does not trigger a duty to defend pursuant to a contractual defense and indemnity clause." Motion at 9, n.2 (citing *Hay v. Tollen*, 4 Wash. App. 2d 1036, at *6, n.6 (Wash. Ct. App. 2018) (unpublished)); *Knipschield,* 74 Wash. App. at 216 & n.3) (emphasis omitted); *see also Ballard*, 149 Wash. App. 1060, at *6 ("[U]nlike an insurance company, the mere potential for liability to fall upon [an indemnitor] does not trigger a duty to defend."). This is because "'[t]he insurer's duty to defend is one of the main benefits of the insurance contract,'" which is not true of a commercial contract. *Ballard*, 149 Wash. App. 1060, at *6 (citations omitted). As a result, a different standard applies to a contractual indemnification provision because it "is not an agreement to insure, but rather a logical allocation of the risk of loss" between

commercial entities. *Id*. Thus, Glacier's acknowledgement that the underlying pleadings can at most only raise a potential for liability—by itself—demonstrates that Cementaid's alleged duty to defend is not implicated in the underlying Actions.

Accordingly, because Glacier has not pleaded that liability would necessarily fall on Cementaid, it cannot state a claim for breach of any duty to defend.

### B. Glacier Has Not Pleaded That Any Of The Underlying Parties Have Prevailed

Glacier does not dispute that, under Washington law, the duty to indemnify only "'arises when the plaintiff in the underlying action prevails on facts that fall within coverage.'" *Knipschield*, 74 Wash. App. at 216 (citations omitted); Motion at 11:14-24. Nor does Glacier dispute that the Complaint fails to plead any facts demonstrating that any party has "prevailed" on any claim against Glacier. Accordingly, Glacier cannot state a claim for breach of any duty to indemnify.

### IV. Glacier's Declaratory Judgment Claim Fails With Its Breach Of Contract Claims

"It is well established that the Declaratory Judgment Act 'does not create an independent cause of action.'" *Hummel v. Nw. Tr. Servs., Inc.*, 180 F. Supp. 3d 798, 810 (W.D. Wash. 2016) (citations omitted). Here, there can be no argument that, since Glacier's declaratory judgment claims are derivative of its breach of contract claims, its cause of action for declaratory judgment fails for the same reasons as its breach of contract claims.

Glacier's allegation that this is somehow "wrong" or contrary to Ninth Circuit caselaw is simply incorrect, as demonstrated by the cases cited in Cementaid's motion. *See, e.g., Krasucki v. Nationstar Mortg., LLC*, Case No. C15-0229JLR, 2015 WL 11251850, at *4 (W.D. Wash. July 8, 2015) ("'[The Declaratory Judgment] Act only creates a remedy.'") (*citing Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989)). And while Glacier cites two cases for the proposition that the Ninth Circuit permits declaratory judgment actions on the duty to defend and indemnify, those cases are inapposite. Unlike the situation here, those cases involve situations in which an insurer sought a declaration that it was not obligated to defend and indemnify its insured. *See Aetna Cas. and Sur. Co. v. Merritt*, 974 F.2d 1196, 1197 (9th Cir. 1992); *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994). As Cementaid

has explained, insurance carriers are governed by a distinct set of rules that do not apply to contractual indemnity provisions because "'[t]he insurer's duty to defend is one of the main benefits of the insurance contract.'" *Ballard*, 149 Wash. App. 1060, at *6 (citations omitted). In contrast, a contractual indemnification provision "is not an agreement to insure, but rather a logical allocation of the risk of loss arising" between commercial entities. *Id.*[6] For this reason, unlike an insurer's duty to defend under an insurance policy, the mere potential for liability does not trigger a duty to defend pursuant to a contractual indemnity clause. *See* Motion at 9, n.2; *supra* Section II.B, note 5.

Here, since Cementaid is not an insurer and Glacier's claims are based solely on the Agreement, there can be no other rights on which to seek a declaration from the Court in the event that Glacier's breach of contract claims are dismissed. Accordingly, because Glacier's claims for breach of contract fail, so must its claims for declaratory judgment.

## V. Conclusion

For the reasons discussed herein and in the Motion, Cementaid respectfully requests that the Court dismiss the Complaint for failure to state a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: December 14, 2018

Respectfully submitted,

**BRACEWELL LLP**

By: */s/ Philip J. Bezanson*
Philip J. Bezanson, WSBA No. 50892
Jared D. Schuettenhelm, WSBA No. 46181
701 Fifth Avenue, Suite 6200
Seattle, WA 98104-7043
Telephone: (206) 204-6200
Facsimile: (800) 404-3970
phil.bezanson@bracewell.com
jared.schuettenhelm@bracewell.com

---

[6] The fact that Glacier did not plan for or expect Cementaid to play the role of insurance carrier is demonstrated by (1) the fact that Glacier has no fewer that eleven insurance policies providing in excess of $60,000,000.00 in coverage for the underlying actions, and (2) it is already relying on insurance to provide for its defense. *Supra* note 5.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Richard F. Whiteley (*pro hac vice* pending)
Stacianne M. Wilson (*pro hac vice* pending)
711 Louisiana Street, Suite 2300
Houston, TX 77002-2770
Telephone:  (713) 221-1123
Facsimile:  (800) 404-3970
richard.whiteley@bracewell.com
staci.wilson@bracewell.com

*Attorneys for Cementaid International Marketing, Ltd.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 14, 2018 to all counsel of record who have consented to electronic service via the Court's CM/ECF system.

*/s/ Philip J. Bezanson*
Philip J. Bezanson
