UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GLACIER NORTHWEST, INC.,

  Plaintiff,

  v.

CEMENTAID INTERNATIONAL MARKETING, LTD.,

  Defendant.

C18-556 TSZ

ORDER

THIS MATTER comes before the Court on defendant Cementaid International Marketing, Ltd.'s motion to dismiss, docket no. 15. Having reviewed all papers filed in support of, and in opposition to, the motion,[1] the Court enters the following order.

**Background**

Plaintiff Glacier Northwest, Inc. ("Glacier" or "GNW") is a Washington corporation that is in the business of distributing concrete-related products, including

---

[1] Both parties have asked the Court to take judicial notice of certain materials. <u>See</u> Def.'s Req. for Judicial Notice (docket no. 15-2); Pla.'s Req. for Judicial Notice (docket no. 21); Def's 2d Req. for Judicial Notice (docket no. 22-1). The Court has reviewed the documents submitted by the parties and considered them to the extent appropriate in connection with a motion brought under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> Fed. R. Civ. P. 12(d).

ORDER - 1

"Caltite," which is a waterproofing additive. Am. Compl. at ¶¶ 3 & 5 (docket no. 8). "Caltite" is manufactured by defendant Cementaid International Marketing, Ltd. ("Cementaid" or "CAIM"), a Hong Kong company. See id. at ¶¶ 4-5. Effective December 31, 2001, Glacier and Cementaid entered into a "Marketing and Material Supply Agreement," pursuant to which Glacier has served as the exclusive distributor of certain Cementaid products, including "Caltite," within a specific geographic area, including California. Id. at ¶ 5. The parties have not provided a copy of the "Marketing and Material Supply Agreement," but counsel for Glacier has declared under oath that the contract contains the following provision:

> CAIM hereby agrees to defend, indemnify and [sic] GNW harmless from and against any and all claims, actions, damages, liabilities, and expenses (including reasonable attorney's fees) arising from or occasioned by any of the following: (a) product liability related to the Schedule Products; (b) the negligence or intentional conduct of CAIM; or (c) infringement of any third-party's intellectual property rights in connection with the manufacture and sale of the Schedule Products.

Brower Decl. at ¶ 3 (docket no. 20).

Glacier sold "Caltite" to Central Concrete Supply Co., Inc. ("Central Concrete"), a Texas corporation, which supplied materials for two construction projects in California, one known as the "Millennium Tower," a luxury condominium on Mission Street in San Francisco, and the other known as "Axis," an upscale residential complex in San Jose. See Am. Compl. at ¶ 6; Exs. 1-4 to Def.'s Req. for Judicial Notice (docket nos. 15-3 – 15-6). The homeowners associations ("HOAs") for the Millennium Tower and Axis have brought legal actions in San Francisco County Superior Court and Santa Clara Superior Court, respectively, against various entities, including the general contractor for both

ORDER - 2

projects, namely Webcor Construction LP, the surviving entity following a merger with Webcor Construction, Inc., doing business as Webcor Builders ("Webcor"), a California entity. *See* Exs. 1 & 3 to Def.'s Req. for Judicial Notice (docket nos. 15-3 & 15-5). In their respective lawsuits, the HOAs assert several claims related to alleged design and/or construction defects in the buildings. *See id.*

In the litigation concerning the Millennium Tower, Webcor has impleaded Glacier and Central Concrete, as well as Cementaid, *see* Ex. 2 to Def.'s Req. for Judicial Notice (docket no. 15-4); Ex. 6 to Pla.'s Req. for Judicial Notice (docket no. 21), and in the proceedings regarding Axis, Webcor has impleaded only Glacier and Central Concrete, *see* Ex. 4 to Def.'s Req. for Judicial Notice (docket no. 15-6). In its pleadings, Webcor has asserted that, if it is liable to the HOAs, then Glacier, Central Concrete, and/or Cementaid is/are liable to it, on theories of equitable indemnification and/or contribution. *See* Exs. 2 & 4 to Def.'s Req. for Judicial Notice (docket nos. 15-4 & 15-6).

In this case, Glacier brings claims under the Declaratory Judgment Act ("DJA"), seeking a ruling that, pursuant to the "Marketing and Material Supply Agreement," Cementaid owes it a duty to defend and indemnify as to Webcor's claims against Glacier. Am. Compl. at ¶¶ 20 & 26 (docket no. 8). Glacier also asserts that Cementaid is in breach of contract by failing to tender a defense. *Id.* at ¶¶ 22 & 28. Cementaid moves to dismiss this action on the ground that the claims asserted by the HOAs and/or Webcor in the underlying actions are not premised on product liability, Cementaid's negligence or intentional conduct, or infringement of intellectual property rights, and therefore do not fall within the scope of the indemnity provision at issue.

**Discussion**

**A.     Applicable Standards and Law**

In ruling on Cementaid's Rule 12(b)(6) motion, the Court must assume the truth of Glacier's allegations and draw all reasonable inferences in Glacier's favor. *See* *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The question for the Court is whether the facts in the operative pleading sufficiently state a "plausible" ground for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The parties have not provided any analysis concerning what law governs with respect to their dispute, but both sides have cited Washington authorities. The Court will therefore assume that Washington law should be applied.

In the insurance context, Washington courts recognize that the duty to indemnify is narrower than the duty to defend. *See* *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404, 229 P.3d 693 (2010). Although the duty to indemnify arises only if the policy "*actually covers*" the insured's liability, the duty to defend is triggered if the policy "*conceivably covers*" the allegations in the underlying complaint. *Id.* (emphasis in original). In evaluating whether an insurer owes a duty to defend, the Court must ordinarily look within the "eight corners" of the insurance contract and the underlying complaint, which it must "construe liberally," to determine whether the alleged facts could, if proven, impose liability on the insured that would be covered under the policy. *See* *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 802-04, 329 P.3d 59 (2014); *see also Am. Best Food*, 168 Wn.2d at 404-05 (citing *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 760, 58 P.3d 276 (2002)). The parties provide no reason why the

Court should not apply the "eight corners" doctrine to their dispute concerning indemnification as opposed to insurance.

Whether an indemnitor has a duty to defend must be determined from the facts known at the time the indemnitee requests a defense. *See Knipschield v. C-J Recreation, Inc.*, 74 Wn. App. 212, 216, 872 P.2d 1102 (1994). To establish a duty to defend, the facts must show that "liability would eventually fall upon the indemnitor, thereby placing it under a duty to defend." *Id.* (quoting *George Sollitt Corp. v. Howard Chapman Plumbing & Heating, Inc.*, 67 Wn. App. 468, 472, 836 P.2d 851 (1992)). In contrast, the duty to indemnify is not triggered until "the plaintiff in the underlying action prevails on facts that fall within coverage." *See id.* (quoting *Sollitt*, 67 Wn. App. at 475).

**B.     Duty to Defend**

In this matter, assuming the truth of Glacier's allegations and drawing reasonable inferences in its favor, examining the "eight corners" of the indemnity provision and the underlying pleadings, and construing liberally the claims asserted by the HOAs against Webcor and by Webcor against Glacier, the Court concludes that Glacier has pleaded a plausible claim that Cementaid might eventually be required to indemnify Glacier and might therefore owe Glacier a duty to defend. The parties appear to agree that Glacier's only involvement in the Millennium Tower and Axis projects was to sell Cementaid's product "Caltite" to Central Concrete, which supplied the waterproofing additive to Webcor. Thus, although not explicitly pleaded, product liability seems to be the theory under which Webcor seeks to recover from Glacier in the event that the HOAs prevail against Webcor. To be clear, the Court is not ruling or making any declaration that

Cementaid owes a duty to defend Glacier; the Court is merely concluding that Glacier's DJA and breach-of-contract claims asserting a duty to defend will survive Cementaid's Rule 12(b)(6) motion to dismiss.

**C.      Abstention**

Pursuant to the Declaratory Judgment Act, the Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). To be justiciable under the DJA, a dispute must (i) be "definite and concrete, touching the legal relations of parties having adverse legal interests," (ii) be "real and substantial," seeking "specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts," and (iii) fall within the subject matter jurisdiction of the Court. *See* *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41 (1937)); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-74 (1950). Even when a suit satisfies the "case or controversy" and other jurisdictional prerequisites, a district court may exercise its discretion to decline to entertain an action under the DJA, so long as its discretion is appropriately guided by the non-exhaustive factors set forth in *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942), and its progeny. *See* *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223-26 (9th Cir. 1998) (en banc).

The *Brillhart* factors to be considered by the Court include: (i) avoiding needless determination of state law issues; (ii) discouraging litigants from filing declaratory

judgment actions as a means of forum shopping; and (iii) avoiding duplicative litigation. *Dizol*, 133 F.3d at 1225; *see also id.* at 1225 n.5 (enumerating other considerations suggested by the Ninth Circuit). *Brillhart* contemplates that the ordinarily applied principle of requiring federal courts to adjudicate claims within their jurisdiction should yield to "considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288. When the matter before the Court involves claims other than those brought under the DJA, the Court may nevertheless abstain under *Brillhart* if the other claims (like Glacier's breach-of-contract claims in this matter) are dependent on, or seek remedies similar to those sought in, the DJA claims. *See Maui Land & Pineapple Co. v. Occidental Chem. Corp.*, 24 F. Supp. 2d 1079, 1081-82 (D. Haw. 1998). If declining to entertain an action is appropriate under *Brillhart*, a district court may, on motion or sua sponte, enter either a stay or a dismissal. *See Wilton*, 515 U.S. at 290 (affirming a stay of a declaratory judgment action); *Brillhart*, 316 U.S. at 498 (remanding for the district court to "exercise its discretion in passing upon the petitioner's motion to dismiss this suit"); *see also Dizol*, 133 F.3d at 1224-27 (concluding that a district court may, but is not required to, sua sponte address whether DJA jurisdiction should be declined).

With regard to Glacier's claims for indemnification, the *Brillhart* analysis is straightforward. Liability has not yet been established in the underlying matters as to Webcor, Central Concrete, or Glacier, and to avoid needless and/or duplicative litigation, the Court hereby STAYS the portion of the DJA claims seeking a declaration that Cementaid must indemnify Glacier. Cementaid's motion to dismiss Glacier's claims for indemnification is STRICKEN without prejudice.

As to Glacier's claims relating to Cementaid's alleged duty to defend, the abstention issue is more complex. In the insurance context, the Court would be reluctant to stay a duty-to-defend claim when either (i) an insurer was incurring defense costs that could not be recouped from the insured if the Court later determined that coverage was not owed, or (ii) an insurer had not tendered a defense that might be owed and the insured was suffering financial hardship as a result. In this case, although Glacier has pleaded that it has incurred "significant" defense costs in the underlying litigation, *see* Am. Compl. at ¶¶ 18 & 24 (docket no. 8), Cementaid contends that Glacier has multiple insurance policies with limits exceeding $60 million in the aggregate, *see* Ex. 1 to Def.'s 2d Req. for Judicial Notice (docket no. 22-2), and that one or more of Glacier's insurers have tendered a defense in the underlying matters. Assuming Cementaid's understanding is correct, then Glacier's duty-to-defend claims merely seek reimbursement for the insurers that are paying Glacier's defense costs, and neither Glacier nor Cementaid will suffer any prejudice as a result of a stay pursuant to *Brillhart*.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)     Defendant Cementaid International Marketing, Ltd.'s motion to dismiss, docket no. 15, is DENIED in part and STRICKEN in part without prejudice.

(2)     This action is hereby STAYED pursuant to *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942), and its progeny. The parties are DIRECTED to file a Joint Status Report within fourteen (14) days after resolution of one or both matters pending in

California against Glacier Northwest, Inc. or by December 30, 2019, whichever occurs first.

    (3)    The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 9th day of April, 2019.

                                              Thomas S. Zilly
                                              United States District Judge